v. Terrell Tompkins, 236525. Thank you. Counsel, I see you've reserved three minutes. We'll go to you when you're ready. Thank you, Your Honor. Good morning. For Mr. Tompkins, Andrew Frisch. This court's opinion in Greenberg helps the government, but it doesn't get them all the way there. Unlike Greenberg, and I think all of the cases in this foliation space, the lost evidence here was indispensable to the government's case. It was actually used and relied on and was the sine qua non of their case. And so we're left with one of a number of consequences. Either there should have been an instruction on adverse inference, where negligence was the culpable state of mind, or counsel was ineffective by not heeding Mr. Tompkins' direction that he review the evidence and he was inattentive for eight months, or it was a due process violation because the defendant was denied an opportunity to inspect the evidence, which the government's said was indispensable to them. They don't work from photographs, they said. As one of the experts said, we need to see it with our own eyes. Would it have been ineffective for counsel to wait until the eve of trial to examine the evidence? Absolutely. I mean, look, in many cases, it would have not made a difference, but when a defense lawyer waits for eight months and the defendant is saying, please look at the evidence, and it's not really in dispute that Mr. Tompkins was very involved in his defense, maybe it'll work out, but maybe it won't. And when it doesn't, and when counsel doesn't heed his client's direction to look at the key evidence, we're not talking about something tangential, we're talking about the ammunition that he purportedly possessed in interstate commerce, yes, he's ineffective. And what would have been different about, what would we have learned from that examination that is different than what we would have learned if it was dirty and rusty? But the photos don't look like it was. They were, sorry. Your Honor, my answer to that question is the same answer that their experts gave, which is, unless you can look at the evidence yourself, not from photographs, you don't know. So the, if the, if defense counsel had brought an expert and gone over and looked at the casings six months before trial, assuming, after the photographs were taken, there is some, the difference would have been made if the, if they looked at that point, which is a reasonable time, six months before trial or three months before trial to look at them, that there's some possibility they would have been rusty or dirty or in some way that they, by examining them, they would have been able to tell that they were not the casings ejected from the gun used on the case. I don't know. And this takes us back to, at least by analogy, what the Supreme Court said in Hamilton and Ashe, which sometimes the omission denies us the opportunity to know what we would have seen had we been there. I don't know. But there has to be a theory. So it's not like they weren't, is your theory that they could have not actually said Lugar and the photos were somehow misleading? The answer to your Honor's question is that sometimes things happen where you can't have a theory because you don't have the foundation. You don't have the prerequisite event. But don't you have to show that it's, it was potentially exculpatory, in which case I would think you'd have to come forward with some, some theory as to how it could be exculpatory. Well, for spoliation, you have to show that it was deliberate and I believe the exculpatory nature of it is part of it too. That doesn't apply for the... That's another, that's another thing that you have to show. But you do have to show that it would have been exculpatory and I think that, that the exculpatory nature of it would have been clear to the government before the, the stuff was foliated. Here's, here's the problem with this case. And by the way, this case appears to be a one-off. Most of these cases in this space deal with evidence where the government had before trial, you know, I'd be, I wouldn't be guilty. We're talking here about a different situation. And I think this gets to the core of, of the problem with this case. Not necessarily the adverse instruction, which is different, ineffective assistance, which is different, is that in order to prove a due process, due process violation on these facts, we have to rely on the government. We have to rely on their credibility. We have to rely on their representations and where their own experts say, I need to look at it myself. I can't look at photographs. It seems incongruous to say, well, Mr. Tompkins, you have to rely on the government. You have to rely on photographs. You have to rely on, on, on these state actors. And I think that's the problem with this case. One of the problems with this case. Well, wouldn't you have to show bad faith? Not for the instruction. You'd have to show bad faith. No, I understand that, for the, for the spoliation. Not at all. Well, for the spoliation, yes, you have to show bad faith. I think that's right. I was asking what you have of that. I can't show bad faith. I can't show it. I can't show it because we were denied an opportunity to look at the evidence. We were denied an opportunity to determine for ourselves what the evidence might have shown. And we're stuck in this unusual posture, having to rely on the credibility of the government and law enforcement. I, I just would, I would say that, you know, 30 years ago when I worked in their office, and I was one of their colleagues in a prior generation, I thought everyone was guilty. I thought law enforcement officers never did anything that was inappropriate. I don't believe that anymore. And it's one of the reasons why, in a case like this, you have to look at the evidence. You have to investigate. You don't know what you're going to find, right? You don't say, well, I might find this, therefore I'll look at it. You just do your homework, right? And it's Rule 16 evidence. And it's not just any Rule 16 evidence. It's the evidence. And this Court has held, and Garcia and a case called, I believe, Residential Funding, put the spoliation aside that a sufficiently culpable state of mind to get the instruction is negligence. And Judge Corman said, well, they would have figured this out themselves, even without the instruction, which I'm not going to give. They would have figured this out anyhow. But that's why you give an instruction, especially where it's an adverse inference against the government. The jury has to know what the law empowers them to do. And the evidence wasn't strong, right? The evidence that Mr. Tompkins committed a state crime, that's strong. The evidence that he possessed ammunition in interstate commerce, that's not strong. And so the absence of the instruction is reversible error. And I'll address... You've reserved three minutes, counsel. I'll see you in a bit. Thank you. And we'll hear from counsel for the government, Ms. Dowerman. May it please the court. My name is Miriam Glazer Dowerman. I represent the United States. I also represented the United States at the trial below. The district court correctly denied the defendant's motion to dismiss the indictment on the basis of spoliation and on the basis of ineffective assistance of counsel. The district court also correctly used his discretion to deny the request for an adverse inference. The judgment of the district court should be affirmed. The issue here is that counsel is attempting to create a novel test that applies, it seems, to this case alone and that ignores the well-established framework and precedent that are applicable to the different arguments that counsel has raised on appeal. You seem then to be conceding that this case is outside the usual architecture of these cases. I'm not, your honor. If I did, that was inartful. What I am saying is that defense counsel's point is that this is a separate kind of novel case. We don't think it is. We think that counsel has raised three different issues and that each of those three different issues has its own framework and that they don't really interact with each other. The framework, as applies to spoliation, applies to both the request for dismissal of the indictment and to some extent to the request for an adverse inference. The question of ineffective assistance of counsel, an entirely different story. So I will begin with spoliation. So the test for dismissal of an indictment based on spoliation is black letter law in this circuit. It requires three things, none of which defendant has met in this case. That the evidence possessed exculpatory value that was apparent on the face of the evidence before the evidence was destroyed. That the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. And that the government acted in bad faith. Is bad faith required when the evidence is exculpatory? I thought bad faith is required only when the evidence is potentially useful. No, Your Honor. In the Greenberg case, the court addressed a situation where defense argued that the evidence was exculpatory, that had been lost by the government, that was no longer available for trial. And the court specifically said in Greenberg that this is a situation where bad is required. And in fact, Greenberg went on at some length about the Trombetta test, those first two prongs that I mentioned, only applies in situations where there is bad faith. Even when the evidence is exculpatory, where the evidence is, as defense counsel put it, the sine qua non of the government's case. On that point, I refer, Your Honors, to Trombetta, which is the case that gives rise to the idea that the exculpatory value must have been apparent, and that it was of such a nature that defense could not obtain comparable evidence. In Trombetta, the evidence that was allegedly spoliated was the breath itself, the sine qua non, if you will, of the government's case that the individual was intoxicated at the time of the traffic stop. And in that case, the government was able to provide ample records of testing that took place of the breath. And based on the fact that there was ample test records and that there was no obvious exculpatory value of the breath sample itself, the request for sanctions for spoliation was denied. And in that particular way, the idea that this is a sine qua non, and therefore this case is unique, is not unique. This is the Supreme Court. What do you say to your adversary's argument that the government's own expert said that unless you actually look at the object itself, you can't tell if it's pristine, and therefore that it may not have been lying around in the in the curtilage of this bar for days or weeks? So the two experts that the government presented at trial, number one was a ballistic expert, and number two, an expert from the ATF who testified that he could tell from the stamp that the bullets had traveled in interstate commerce. So there was no expert opinion as to whether the shell casings were weathered or, you know, had been sitting out. That was simply the testimony of there was a police officer who testified that she did not observe any kind of rust or weathering, and that in her kind of experience as a police officer, but not as an expert, she didn't see it. And then there were the photographs themselves. But in terms of the expert testimony that they had to see these items to be able to make their own conclusions, I have two responses to that. Number one, the experts themselves, the ballistics expert, yes, he had to see the evidence himself, and he could not work off of pictures. And that's because ballistics is extremely technical. You have to look at the microscopy of it, and that evidence was never going to be before the jury anyway. The jury was never going to look at the microscope. The jury was always going to have to rely on the expert's opinion as to the ballistics evidence. So that was not changed whether the casings were there for the jury to look at or not. The ATF expert testified that, yes, in this particular case, because he had made his first conclusion, his first report based on a prose report stating what the shell casing said, but had not actually looked at that in himself, he did need to look at the shell casings. But his testimony was that in a case, kind of an abstract case, where he needed to determine whether there was an interstate nexus, he was able to look at a high-quality, high-resolution photograph and determine from the stamp that's visible in that photograph whether the ammunition had traveled in interstate commerce. So in terms of that first issue, the experts did not really say that. That's what the In terms of the second issue, the jury is entitled to rely on the testimony at trial and the documents at trial. And the government is able to show its case in the way that it chooses to show. So if the government chooses to put on its case, and I realize that this is a slightly different situation, but if the government had chosen to put on its case exclusively from the testimony of experts and lay witnesses and photographs, then that would not have been a problem. And so the fact that that was the evidence in this case does not inherently render the verdict suspect. So I will move on if your honors are ready. I'm going to back you up for a second. Actually, I'm looking at Greenberg here, and it very clearly does, as you say, cite Trumpetta. And it also cites Illinois v. Fisher, which is 2004. And it does say what I for exculpatory evidence. It is that issue only is required only when the evidence is merely potentially useful. So if the defendant is able to show that this evidence, that the casings themselves are actually exculpatory, as opposed to the kind of thing that if I had them, I think potentially useful as described in other cases as might lead to a viable defense, then bad faith is not required, right? If they're exculpatory, if this evidence is actually exculpatory, the bad faith showing is unnecessary. And so we then need to look at the details of whether these casings are exculpatory, not just whether they're bad faith. Isn't that right? So your honor, if you do look at the details of what Greenberg says you have to look at to determine whether something is exculpatory, it can't just be kind of, well, maybe it was exculpatory. And defense counsel frankly admits that he has no way of knowing. So this falls into the potentially useful evidence category, not the exculpatory evidence category from your perspective? Your honor, the Greenberg test is that the evidence possessed exculpatory value that was apparent before the evidence was destroyed. And there is none here. There simply is none. All of the evidence about these shell casings is that they were inculpatory rather than exculpatory. Well, what if the evidence that was apparent was that when the officers found it, this is a complete hypothetical, they were rusty and dirty and appeared to have been on the sidewalk for months. That evidence would likely have been visible in the photographs. Well, not if it's been cleaned up first. I think that's what counsel is essentially alleging that there's some possibility of nefarious conduct by law enforcement and that the defendant shouldn't be forced to be reliant on the law enforcement officers to convey accurate information. He should have a chance to look and see if there's some traces that the photos don't reveal. So your honor, there's a lot of evidence in this case from a number of different individuals. And that's where, frankly, the bad faith requirement remains important because these shell casings were not lost because somebody kind of came up with a problem. They were tested over and over again. Some of that testing was favorable to government. Some of it was not. For example, we tested for DNA evidence and for fingerprints, and there were no fingerprints and no DNA. And we turned that information over to the defense. And so the shell casings were not kind of exclusively bad for the defendant. We turned over that information. What there was not was any reason whatsoever to get rid of those shell casings because there was ample testimony that the lack of DNA evidence and the lack of fingerprints would not be exculpatory because the expert testified that that's kind of not found on a spent cartridge. But also the evidence custodian who lost the shell casings, it was a pure accident. He had no reason to lose them. He knew nothing about the case. He testified at trial. He testified that he picked up the shell casings from the FedEx, from the mail room. He brought them to his office, to the evidence room. Somewhere they got lost. So this is not a situation where somebody sees potentially exculpatory value in these shell casings and loses them or destroys them. This is a situation where it's purely gone and through no fault of anybody's. I can address the ineffective assistance of counsel or if your honors prefer, I can rely on the briefs. I think we're all set, counsel. Thank you. We have your argument. Thank you. And Mr. Frisch, you reserve three minutes. Thank you, your honor. I want to make two points. First of all, the prosecutor said that they could have preceded a trial just with photographs. They could have elected to do so. That's true. But this isn't purely a sufficiency case. Had they so preceded, Mr. Tompkins would have had the ammunition to inspect. And at least Garcia and residential funding are not novel and it's not my idea. It's the settled law of this circuit. As the court explained in those cases, the inference, the adverse inference against the government restores the evidentiary balance. The inference should be against the party responsible for the loss. And as Judge Deary said in Soriano, the degree of malfeasance when it comes to the instruction is besides the point because the damage is done whether it's a thoughtless blunder or a deliberate act, but also because of the virtual impossibility to come to overcome all the procedural obstacles and institutional reluctance to find misconduct. So if the court's not inclined to find spoliation on this, on the unusual facts of this case, it should at least remand for a new trial based on Judge Corman's failure to give the adverse instruction to which Mr. Tompkins was entitled. For an adverse inference charge, would you not have to show or at least raise an issue as to destruction with a culpable? No, not at all. No, the case law is clear that you have to show a culpable state of mind, but that has been interpreted by the courts, this court, to be negligence is okay. If you have negligence, you get the adverse instruction. In which case is that? That's Garcia. Which is a summary order, right? I don't believe so. There's residential funding. That's a civil case that is a published opinion. Garcia is cited in your brief as 596 Fed Appendix, which would suggest it's a summary order. No, it's relying on CHIN, which is a published opinion. Okay. All right. Your Honors, thank you. Thank you. All right. Thank you both. The matter is submitted and we'll take it under advisement.